UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CITY OF BOSSIER CITY                        CIVIL ACTION NO. 11-0472

VERSUS                                              JUDGE S. MAURICE HICKS, JR.

CAMP DRESSER & MCKEE INC.          MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment (Record Document 82) filed by the Plaintiff, the City of Bossier City ("the City"). The motion addresses the competing claims for damages arising from the contractual obligations of Defendant, CDM Smith Inc., formerly Camp Dresser & McKee, Inc. ("CDM"), to perform certain work for the City pursuant to the terms of: (1) Amendment No. 2 To Agreement Between Owner and Engineer, dated May 21, 2008; and (2) Amendment No. 3 To Agreement Between Owner and Engineer, dated November 9, 2009. See id. CDM opposed the Motion for Partial Summary Judgment. See Record Document 102. After its review of the partial summary judgment record, the Court finds that no genuine disputes of material fact exist and the City's Motion for Partial Summary Judgment is, therefore, **GRANTED**.

**BACKGROUND**[1]

From October 2008 to December 2011, Bryan Kauffer ("Kauffer") was employed by the City as Director of Public Utilities. During most of 2009, Justin Haydel ("Haydel") was employed by CDM and served as a vice-president of CDM. Haydel was also Bossier's

---

[1]The background section is drawn from the City's Statement of Material Facts as to Which There Exists No Genuine Issue to be Tried (Record Document 82-1) and CDM's Statement of Contested Material Facts (Record Document 102-1). Many of the City's facts went uncontested. Citations to the record will be included for all contested facts.

Client Services Manager for the projects at issue in this case, meaning he was the City's primary CDM contact on the projects. See Record Document 102-1 at ¶ 3. Haydel resigned his position on December 3, 2009. See id.

On February 14, 2006, the City and CDM entered into a Standard Form of Agreement Between Owner and Engineer For Study and Report and Professional Design, Bidding, and Construction Services ("WTP Contract"). The WTP Contract was executed by Mayor Lorenz Walker ("Mayor Walker") on behalf of the City and Haydel on behalf of CDM. See Record Document 82, Exh. 1 (Bates # CAMP 14195 - CAMP 14220). The WTP provided:

> OWNER [the City] intends to Expand and Modify the Bossier Water Treatment Plant (the "Project").
>
> OWNER and ENGINEER [CDM] in consideration of their mutual convenants herein agree in respect of the performance or furnishing of professional engineering services by ENGINEER with respect to the Project and the payment for those services by OWNER as set forth below.

Id., Exh. 1 (Bates # CAMP 14195).

On August 15, 2007, the City and CDM entered into Amendment No. 1 To Agreement Between Owner And Engineer ("Amendment No. 1"), which was executed by Kauffer on behalf of the City and Haydel on behalf of CDM. See id., Exh. 1 (Bates # CAMP 14190 - CAMP 14193). This document amends the WTP Contract.

On May 21, 2008, the City and CDM entered into Amendment No. 2 To Agreement Between Owner And Engineer ("Amendment No. 2"), which was executed by Mayor Walker on behalf of the City and Haydel on behalf of CDM. See id., Exh. 1 (Bates # CAMP 19566 - CAMP 19568). This document amends the WTP Contract. Amendment No. 2 provided, in pertinent part:

1. The Basic Services of ENGINEER as described in the Agreement are amended and supplemented as follows:

    . . .

    d. ENGINEER shall update Bossier City's Waste Distribution System model.

    . . .

. . .

4. The payment for services rendered by ENGINEER shall be as set forth below:

    . . .

    c. Update Bossier City Water Distribution System Model - $12,000 lump sum.

Id., Exh. 1 (Bates # CAMP 19566 - CAMP 19567).

On November 9, 2009, the City and CDM entered into Amendment No. 3 To Agreement Between Owner And Engineer ("Amendment No. 3"), which was executed by Mayor Walker on behalf of the City and Haydel on behalf of CDM. See id., Exh. 1 (Bates # CAMP 02899 - CAMP 02902). This document amends the WTP Contract. Amendment No. 3 provided, in pertinent part:

1. The Basic Services of ENGINEER as described in the Agreement are amended and supplemented as follows:

    . . .

    b. ENGINEER shall prepare a Conceptual Design Evaluation of the North River Pump Station as defined in Exhibit A to this contract amendment.

    . . .

    d. ENGINEER shall prepare the design, provide bidding services, general services during construction, inspection and additional

      services as defined in Exhibit A to this contract amendment for the Raw Water Pipeline.

      . . .

4.     The payment for services rendered by ENGINEER shall be as set forth below:

      . . .

    c.     Conceptual Design Evaluation of the North River Pump Station - $413,000 lump sum as defined in Exhibit C.

      . . .

    e.     Raw Water Pipeline Design Project - $780,750 lump sum (Inspection budgeted at $218,400 paid hourly per Exhibit C).

Id., Exh. 1 (Bates # CAMP 02899 - CAMP 02900). These three tasks, the Waste Distribution System model, the Conceptual Design Evaluation of the North River Pump Station, and the Raw Water Pipeline, are the subject of the instant Motion for Partial Summary Judgment.

By letter dated June 16, 2010, the City provided CDM thirty (30) days written notice[2] of termination of the February 14, 2006 WTP Contract, as amended by Amendment Nos. 1, 2 and 3. See Record Document 82, Exh. 53 (Bates # CDM 10488 - CDM 10490). With respect to Amendment No. 2, the City asserted that CDM was in breach because the City had not received the Water Distribution System model although the project had begun almost two years before. See id., Exh. 53 (Bates # CDM 10488). With respect to

---

[2]Section 8.1 of the WTP Contract provided that "further services under this Agreement may be terminated by either party upon thirty days' written notice in the event of substantial failure by the other party to perform in accordance with the terms thereof through no fault of the terminating party." Record Document 82, Exh. 1 (Bates # CAMP 14209).

Amendment No. 3, the City asserted that CDM was in breach as to its obligation to prepare a Conceptual Design Evaluation of the North River Pump Station, namely because the City was not aware of any work performed by CDM regarding this task. See id., Exh. 53 (Bates # CDM 10489). The City formally demanded return of the money it previously paid for the model and the conceptual design evaluation. See id. The City also directed CDM to perform no further work under Amendment Nos. 2 and 3 of the WTP Contract. See id.

As to the Water Distribution System model, the City contends that CDM breached the WTP Contract because the City never received from CDM a final report on CDM's work to update the Water Distribution System model or an electronic file containing input to update the model. See Record Document 82-1 at ¶¶ 27-28. The City seeks the return of the $11,400 it previously paid CDM for the update to the City's Water Distribution System model. Conversely, CDM seeks to recover from the City the remaining $600 which CDM invoiced for the update. CDM argues the City improperly terminated the contracts in June 2010 and ordered CDM to cease work on the project. See Record Document 1-2-1 at ¶ 27. CDM further alleges that the City did not request or inquire about CDM's work product. See id.

With respect to the Conceptual Design Evaluation of the North River Pump Station, the City alleges the following facts:

- The City issued to CDM a notice to proceed dated January 6, 2010, with an effective date of January 11, 2010.

- Kauffer is unaware of CDM performing any survey work or any geotechnical field investigation.

- Kauffer is unaware of an Alternatives Definition Meeting ever being held.

- The City never received from CDM a draft of a Conceptual Design Report.

- Kauffer is unaware of CDM ever holding a permit meeting with the Corp of Engineers.

Record Document 82-1 at ¶¶ 29-34. As to the Design of the Raw Water Pipeline, the City alleges the following facts:

- The City issued to CDM a notice to proceed dated January 6, 2010, with an effective date of January 11, 2010.

- Kauffer is unaware of an Alternatives Definition Meeting ever being held.

- Kauffer is unaware of CDM performing any Desktop Analysis. The City never received anything from CDM indicating that CDM had completed the required Desktop Analysis.

- Kauffer is unaware of CDM performing a Field Analysis. The City never received anything from CDM indicating that CDM had performed and/or completed the required Field Analysis.

Id. at ¶¶ 35-38. Based on these facts, the City seeks the return of: (1) the $9,555 that it previously paid to CDM for the Conceptual Design Evaluation of the North River Pump Station; and (2) the $107,710 that it previously paid to CDM for the Design of the Raw Water Pipeline.

Conversely, CDM seeks to recover from the City: (1) $55,095 that CDM invoiced the City for the Conceptual Design Evaluation of the North River Pump Station, but which the City has not paid; and (2) $142,259.50 that CDM invoiced the City for the Design of the Raw Water Pipeline, but which the City has not paid. CDM argues the City misconstrues the notice to proceed; the work performed can be determined by the invoices; and the work performed can be determined by the affidavit and closeout memo of James Gary Yallaly ("Yallaly"), a CDM senior project manager. See Record Document 102-1 at ¶¶ 29-38.

## LAW AND ANALYSIS

**I.      Partial Summary Judgment Standard.**

Rule 56(a) provides, in pertinent part:

Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).[3]  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 728.  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

---

[3]The Court notes that amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the Court's analysis.  F.R.C.P. 56(a) and Advisory Committee Notes.

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F.3d 701, 737 (5th Cir.2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.1993).

## II.     Interpretation of Contracts.[4]

Under Louisiana law, the "[i]nterpretation of a contract is the determination of the common intent of the parties." La. C.C. Art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. Art. 2046. "When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." Wooley v. Lucksinger, 61 So.3d 507, 558 (La. 2011). "A contract is ambiguous only if its terms are unclear or susceptible to more than one interpretation, or the intent of the parties cannot be ascertained from the language employed." Gebreyesus v. F.C. Schaffer & Assocs., Inc., 204 F.3d 639, 643 (5th Cir.2000). "[T]ortured constructions [of contracts] which seize on every word as a possible source of confusion will be dismissed as mere sophistry." Bernard v. Chrysler Ins. Co., 734 So.2d 48, 53 (La. App. 3 Cir. 1999).

---

[4]This diversity case is governed by Louisiana substantive law.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 585 S.Ct. 817; Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir.2010).

**III.    Analysis.**

    **A.    Water Distribution System Model.**

Amendment No. 2 provided for CDM to "update Bossier City's Waste Distribution System model." Record Document 82, Exh. 1 (Bates # CAMP 19566). The payment for such service was $12,000 lump sum. See id., Exh. 1 (Bates # CAMP 19567). It is undisputed that the City paid to CDM a total of $11,400 for this task.

There is no dispute that the notice to proceed as to the Waste Distribution System model was issued on May 28, 2008. See id., Exh. 172. The record reflects that CDM's work began sometime in July 2008. See id., Exh. 79. Yet, as of June 2010, when the City sent CDM the termination letter, the update to the Water Distribution model had not been delivered to the City. Richard Gerlach ("Gerlach"), CDM's representative at the corporate deposition, identified a draft report, but stated that he did not know if the draft report had been sent to the City and he did not think a final report had been sent to the City. See id., Exh. 176 at 25-27. Gerlach further testified that he thought it was "fair" to say that the City had never received a hard copy or electronic file of the Waste Distribution System model. See id., Exh. 176 at 29.

In opposition, CDM argues it "substantially performed"[5] its responsibilities regarding the update of the City's Water Distribution model and was prevented from performing further work. Record Document 102 at 7. CDM specifically points to its invoices to

---

[5]CDM maintains that it substantially performed the task of updating the Water Distribution System model. CDM further argues that "substantial performance is a question of fact" and summary judgment must be denied. Yet, as noted by the City, the substantial compliance rule is applied to construction contracts, not other commutative contracts such as the contract at issue in this motion. See Record Document 106 at 1; Record Document 91 at 2-3.

"establish that [it] complied with its responsibilities." Id. at 11. CDM maintains that the invoices show that it not only performed work related to this task within months of receiving notice to proceed, but completed 95% of this task within around six months of receiving that notice to proceed. See id. at 8-9.

CDM also argues that it was not required under the contract to return or deliver the updated Water Distribution System model to the City. See id. at 10-11. CDM further maintains that it was not in breach of the contract because there was absolutely no time limit to its completion of the updated model. See id. at 13-14. The Court finds the contractual provisions at issue to be clear and unambiguous. CDM is attempting to create ambiguity where there is none. See Bernard, 734 So.2d at 53 ("[T]ortured constructions [of contracts] which seize on every word as a possible source of confusion will be dismissed as mere sophistry.").

The Court further finds that the competent summary judgment evidence shows that CDM never delivered the updated model to the City. CDM relies upon its invoices as evidence of its work. However, the invoices amount to conclusory allegations and not competent summary judgment evidence as to what work was actually performed. The invoices establish the amount which CDM billed, not the actual work performed. Thus, the undisputed evidence establishes that CDM did not send the draft report to the City; CDM most likely did not complete a final report and, if it was ever finished, did not send the final report to the City; and CDM did not deliver any electronic files regarding the update to the City. The summary judgment record demonstrates that the City was justified in terminating the WTP Contract, as amended by Amendment No. 2. Partial summary judgment in favor of the City is **GRANTED** as to the Water Distribution System model and the City is entitled

to return of the $11,400 it previously paid to CDM in connection with the update to the Water Distribution System model.

### B.   Conceptual Design Evaluation of the North River Pump Station

Amendment No. 3 provided that CDM would "prepare a Conceptual Design Evaluation of the North River Pump Station." Record Document 82, Exh. 1 (Bates # CAMP 02899). Exhibit A included a detailed description of the work to be performed by CDM and a time lime for the work to be accomplished. See id., Exh. 1 (Bates # CAMP 02905 - CAMP 02909). The payment for such service was $413,000 lump sum. See id., Exh. 1 (Bates # CAMP 02900). A notice to proceed was issued on January 6, 2010, with an effective date of January 11, 2010. See id., Exh. 178 at ¶ 28.

The schedule set forth in Exhibit A to Amendment No. 3 established specific deadlines for the work to be performed by CDM:

| | |
|---|---|
| Project Kickoff Meeting: | 14 days after agreement execution (due date of January 25, 2010 |
| Survey: | Within 30 days after Kickoff Meeting (due date of February 24, 2010). |
| Geotechnical Field Investigation: | Within 30 days after Kickoff Meeting (due date of February 24, 2010). |
| Alternatives Definition Meeting: | Within 60 days after Kickoff Meeting (due date of March 25, 2010). |
| Submit Conceptual Design Report (Draft): | Within 60 days after Alternatives Definition Meeting (due date of May 24, 2010). |

| | |
|---|---|
| Permit Meeting with Corp of Engineers: | Within 90 days after Alternatives Definition Meeting (due date of June 23, 2010). |
| Conceptual Design Report Review Meeting: | Within 14 days after submittal of Conceptual Design Report. |
| Submit Conceptual Design Report (Final): | Within 30 days after receipt of City comments. |

Id., Exh. 1 (Bates # CAMP 02910). CDM's own pay requests show that in May 2010, 0% surveying had been performed; 0% geotechnical had been performed; and 7% design evaluation and report had been performed. See id., Exh. 94. As of June 12, 2010, 0% surveying had been performed; 0% geotechnical had been performed; and 9% design evaluation and report had been performed. See id., Exh. 1 (Bates # CAMP 204946).

Kauffer, the City's Director of Public Utilities, confirmed in his affidavit that he was unaware of CDM performing any survey work or geotechnical work in connection with the Conceptual Design Evaluation of the North River Pump Station. See id., Exh. 175 at ¶¶ 29-30. He further stated that he was unaware if an alternatives definition meeting ever was held. See id. at ¶ 31. Kauffer explained that the City never received from CDM a draft of a Conceptual Design Report and he was unaware of CDM ever holding a permit meeting with the Corp of Engineers. See id. at ¶¶ 32-33.

In the corporate deposition of CDM, Gerlach testified that a kick-off meeting may have been held. See id., Exh. 176 at 81-82. He further stated that he did not know if survey work or geotechnical field investigation ever occurred or if an alternatives definition meeting was ever held. See id., Exh. 176 at 82-83. Gerlach testified that he was not aware of any of the deliverables for this project ever being delivered to the City and that he

did not know if a meeting for design alternatives was ever held. See id., Exh. 176 at 83-84, 92. He admitted that CDM does not even know if there were any documents or electronic files generated with respect to the Conceptual Design Evaluation of the North River Pump Station. See id., Exh. 176 at 94-96.

In opposing the motion, CDM points "to the documentary evidence, including invoices and work-product, created around the time that the task was being performed." Record Document 102 at 16. CDM once again relies upon its invoices as "a descriptive guide of the work performed." Id. at 17. CDM also relies heavily upon the Closeout Memo to File drafted by Yallaly, arguing that the City did not have sufficient grounds to terminate the contract as provided in the termination letter. See id.

The Court finds that the invoices, Yallaly's affidavit, and the Closeout Memo to File relied upon by CDM do not create genuine disputes of material fact preventing partial summary judgment. As previously held, the invoices do not establish the work that was actually performed. The City has moved to strike both Yallaly's affidavit and the Closeout Memo to File pursuant to Rule 56(c)(2), which provides:

> A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

F.R.C.P. 56(a)(2).

After CDM's corporate deposition in November 2012, the City repeatedly asked for the following information:

> Finally, if CDM plans to put on evidence at trial related to the Conceptual Design Evaluation of the North River Pump Station and/or the Raw Water Pipeline Design which is inconsistent with the testimony of Richard Gerlach . . ., please identify who that person is (those persons are) on CDM Smith's witness list so that the corporate deposition of CDM can be rescheduled to address those two matters.

Record Document 106 at 2. CDM never identified any person, much less Yallaly, to provide additional information on the Conceptual Design of the North River Pump Station and the Raw Water Pipeline projects. See id. Yallaly was not identified by CDM in initial disclosures, in responses to interrogatories, or on witness lists, even as late as June 2013.[6] See id. Additionally, the Closeout Memo to File was submitted in response to the instant Motion for Partial Summary Judgment, but was never produced to the City prior to the filing of suit or in discovery. See id. at 3. The Court agrees that this document was clearly responsive to discovery requests, but it was never produced. See id. Thus, the affidavit and Closeout Memo to File are hereby stricken.

Notwithstanding, even if the Court were to consider such documents, partial summary judgment as to the Conceptual Design of the North River Pump Station is proper. The affidavit is replete with vague and conclusory statements and the Closeout Memo to File is, like the invoices, not competent summary judgment evidence that any work was actually performed. In his affidavit, Yallaly does not attest that he has personal knowledge of all of the matters set forth in the Closeout Memo to File. For these reasons, the Court finds no genuine disputes of material fact exist.

The undisputed evidence establishes, at a minimum, that CDM: (1) did not perform the required survey work; (2) did not perform the required geotechnical field investigation; (3) did not have an alternatives definition meeting; (4) did not submit to the City a draft of a conceptual design report; and (5) did not have a permit meeting with the Corp of Engineers. None of this work appears to have been performed at all. Thus, the Court finds

---

[6]CDM filed its opposition on June 28, 2013. See Record Document 102.

that CDM was in breach of the WTP Contract, as amended by Amendment No. 3. The City was justified in terminating the contract. Partial summary judgment in favor of the City is **GRANTED** as to the Conceptual Design Evaluation of the North River Pump Station and the City is entitled to return of the $9,555 previously paid to CDM in connection with this task.

    **C.    Design of the Raw Water Pipeline.**

Amendment No. 3 provided that CDM would "prepare the design, provide bidding services, general services during construction, inspection and additional services as defined in Exhibit A to this contract amendment for the Raw Water Pipeline." Record Document 82, Exh. 1 (Bates # CAMP 02899). Exhibit A to Amendment No. 3 included a detailed description of work to be performed by CDM in connection with the Design of the Raw Water Pipeline and a time line for the work to be accomplished. See id., Exh. 1 (Bates # CAMP 02912 - CAMP 02917). The payment for such service was $780,750 lump sum. See id., Exh. 1 (Bates # CAMP 02900). A notice to proceed was issued in connection with the Design of the Raw Water Pipeline on January 6, 2010, with an effective date of January 11, 2010. See id., Exh. 174; Exh. 175 at ¶ 33.

Exhibit A to Amendment No. 3 established specific deadlines for the work to be performed by CDM:

| | |
|---|---|
| Project Kickoff Meeting: | 14 days after agreement execution (due date of January 25, 2010 |
| Survey: | Within 30 days after Kickoff Meeting (due date of February 24, 2010). |

| | |
|---|---|
| Alternatives Definition Meeting: | Within 45 days after Kickoff Meeting (due date of March 11, 2010). |
| Desktop Analysis: | Within 45 days after Alternatives Definition Meeting (due date of April 25, 2010) |
| Field Analysis: | Within 90 days after Alternatives Definition Meeting (due date of June 9, 2010). |
| Hydraulic Assessment: | Within 120 days after Alternatives Definition Meeting. |
| Permitting Meetings with Levee Board, etc.: | Within 135 days after Alternatives Definition Meeting. |
| Route Selection Meeting: | Within 150 days after Alternatives Definition Meeting. |
| Geotechnical Investigation: | Within 45 days after Route Selection Meeting. |
| Preliminary Design Report (Draft): | Within 90 days after Route Selection Meeting. |
| Preliminary Design Report Review Meeting: | Within 14 days after submittal of Conceptual Design Report. |
| Preliminary Design Report (Final): | Within 14 days after the receipt of CITY comments. |
| Final Design: | 180 days after approval of Preliminary Design Report. |
| Bidding Services: | As Required. |
| GC During Construction/Inspection: | As Required. |

Id., Exh. 1 (Bates # CAMP 02916 - CAMP 02917). CDM's own pay requests show that CDM performed no work in connection with the Design of the Raw Water Pipeline in January, February, and March 2010. See id., Exhs. 91 & 92. As of April 17, 2010, the pay requests indicate that CDM has performed the "Surveying" and 5% of the "Design, Bidding, Const." Id., Exh. 93. As of May 15, 2010, the pay requests indicate that CDM had performed the "Surveying," 1% of the "Geotechnical," 2% of the Hydraulic Analysis, and 9% of the "Design, Bidding, Const." Id., Exh. 94. As of June 12, 2010, the pay requests indicate that CDM has performed the "Surveying," 8% of the "Geotechnical," 5% of the Hydraulic Analysis, and 22% of the "Design, Bidding, Const." Id., Exh. 51.

Kauffer, the City's Director of Public Utilities, confirmed in his affidavit that an Alternative Definition Meeting never occurred. See id., Exh. 175 at ¶ 34. He further confirmed that he was unaware of CDM completing a Desktop Analysis and that he was unaware of CDM conducting any Field Analysis. See id., Exh. 175 at ¶¶ 35-36.

In the corporate deposition of CDM, Gerlach testified that a kick-off meeting was not held until March 4, 2010. See id., Exh. 77; Exh. 176 at 55-56. He further stated that he believed the survey work had been performed; he did not know if the survey work was ever delivered to the City; he did not know whether an Alternative Definition Meeting was ever held; and he did not know if a desktop analysis was ever done. See id., Exh. 176 at 57-59. Gerlach testified that he did not know what a Field Analysis was and in order to explain Hydraulic Assessment, he had to read from the contract documents. See id., Exh. 176 at 60-63. He admitted that he did not know if any of the deliverables were ever delivered to the City. See id., Exh. 176 at 70-71.

In opposing the motion, CDM notes that "the circumstances surrounding . . . [the] Raw Water Pipeline Project are substantially similar to . . . the Conceptual Design Evaluation." Record Document 102 at 20. CDM points to invoices, Yallaly's affidavit, and the Closeout Memo to File. For the reasons previously assigned, the Court finds that none of these documents create genuine disputes of material fact.

The undisputed evidence establishes, at a minimum, that CDM: (1) performed the survey work, but in an untimely manner; (2) never delivered the survey information to the City; (3) did not have an alternatives definition meeting; (4) did not perform the Desktop Analysis; and (5) did not perform a Field Analysis. Thus, the Court finds that CDM was in breach of the WTP Contract, as amended by Amendment No. 3. The City was justified in terminating the contract. Partial summary judgment in favor of the City is **GRANTED** as to the Design of the Raw Water Pipeline and the City is entitled to return of the $107,710 previously paid to CDM in connection with this task.

> **D. Dismissal of CDM's Claims in Relation to the Water Distribution System Model, the Conceptual Design Evaluation of the North River Pump Station, and the Design of the Raw Water Pipeline.**

In its counterclaim, CDM alleged that the City wrongfully terminated the WTP Contract and that the City owed CDM $600 in connection wit the Water Distribution System model; $55,095 in connection with the Conceptual Design of the North River Pump Station; and $142,259.50 in connection with the Design of the Raw Water Pipeline. Such claims are rejected, as this Court has held that the City properly terminated the WTP Contract in light of CDM's breaches.

## CONCLUSION

Based on the foregoing analysis, the Court finds no genuine disputes as to any material fact. The City is entitled to partial judgment in its favor as a matter of law. The City is hereby awarded $11,400 in connection with the update to the Water Distribution System model; $9,555 in connection with the Conceptual Design Evaluation of the North River Pump Station; and $107,710 in connection with the Design of the Raw Water Pipeline. Additionally, CDM's claims for $600 in connection with the update to the Water Distribution System model; $55,095 in connection with the Conceptual Design Evaluation of the North River Pump Station; and $142,259.50 in connection with the Design of the Raw Water Pipeline are hereby dismissed. Accordingly,

**IT IS ORDERED** that the Motion for Partial Summary Judgment (Record Document 82) filed by the City be and is hereby **GRANTED**.

**THUS DONE AND SIGNED**, Shreveport, Louisiana, this 23rd day of September, 2014.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE