UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CITY OF BOSSIER CITY                               CIVIL ACTION NO. 11-0472

VERSUS                                                     JUDGE S. MAURICE HICKS, JR.

CAMP DRESSER & MCKEE INC.                    MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment (Record Document 83) filed by the Plaintiff, the City of Bossier City ("the City"). The motion addresses one of the elements of damages asserted by Defendant, CDM Smith Inc., formerly Camp Dresser & McKee, Inc. ("CDM"), in connection with its counterclaim that the City improperly terminated the Standard Form of Agreement Between Owner and Engineer For Study and Report and Professional Design, Bidding, and Construction Services, dated February 14, 2006 ("WTP Contract"), as amended by Amendment No. 2 To Agreement Between Owner and Engineer, dated May 21, 2008 and Amendment No. 3 To Agreement Between Owner and Engineer, dated November 9, 2009. See id. Specifically, CDM claims it is owed $889,418.05 in connection with the City's termination of the WTP Contract. See Record Document 4.

CDM has opposed the City's Motion for Partial Summary Judgment. See Record Document 103. After its review of the partial summary judgment record, the Court finds that no genuine disputes of material fact exist and partial summary judgment in favor of the City is appropriate as a matter of law. The Motion for Partial Summary Judgment is, therefore, **GRANTED**.

## BACKGROUND[1]

From October 2008 to December 2011, Bryan Kauffer ("Kauffer") was employed by the City as Director of Public Utilities. During most of 2009, Justin Haydel ("Haydel") was employed by CDM and served as a vice-president of CDM. In addition to being vice-president, he was also Bossier's Client Services Manager for the projects at issue in this case. See Record Document 103-1 at ¶ 3. According to CDM, this title meant Haydel was Bossier's primary CDM contact on the projects. See id. Haydel had also been employed by CDM prior to 2009. See id. Haydel resigned his position on December 3, 2009. See id.

On February 14, 2006, the City and CDM entered into the WTP Contract. The contract was executed by Mayor Lorenz Walker ("Mayor Walker") on behalf of the City and Haydel on behalf of CDM. See Record Document 83, Exh. 1 (Bates # CAMP 14195 - CAMP 14220). The WTP provided that the City "intends to Expand and Modify the Bossier Water Treatment Plant." Id., Exh. 1 (Bates # CAMP 14195).

On August 15, 2007, the City and CDM entered into Amendment No. 1, which was executed by Kauffer on behalf of the City and Haydel on behalf of CDM. See id., Exh. 1 (Bates # CAMP 14190 - CAMP 14193). This document amends the WTP Contract.

On May 21, 2008, the City and CDM entered into Amendment No. 2, which was executed by Mayor Walker on behalf of the City and Haydel on behalf of CDM. See id., Exh. 1 (Bates # CAMP 19566 - CAMP 19568). This document amends the WTP Contract.

---

[1] The background section is drawn from the City's Statement of Material Facts as to Which There Exists No Genuine Issue to be Tried (Record Document 83-1) and CDM's Statement of Contested Material Facts (Record Document 103-1). Many of the City's facts went uncontested. Citations to the record will be included for all contested facts.

Amendment No. 2 provided, in pertinent part, that CDM "shall provide design services, bidding services and general services during construction related to the upgrade and expansion of the Bossier City Water Treatment Plant." Id., Exh. 1 (Bates # CAMP 19566). The payment for the Bossier City Water Treatment Plant Project was set forth in Amendment No. 2:

| Project Name | Design Fee | Bidding Fee | Construction Services Fee |
|---|---|---|---|
| Water Treatment Plant | $2,123,525 | $163,348 | $980,089 |

Id., Exh. 1 (Bates # CAMP 19567). This fee arrangement is reflected in Pay Request Nos. 1-11.[2] See id., Exhs. 78-88. The total fee was $3,266,962.

On November 9, 2009, the City and CDM entered into Amendment No. 3, which was executed by Mayor Walker on behalf of the City and Haydel on behalf of CDM. See id., Exh. 1 (Bates # CAMP 02899 - CAMP 02902). This document amends the WTP Contract. Amendment No. 3 increased CDM's fee for "General Engineering Services During Construction and for additional services provided during design phase" by "$1,910,938." Id., Exh. 1 (Bates # CAMP 02900). Amendment No. 3 also provided for an additional fee to CDM of "$1,592,136 to be paid according to the hourly rates shown in Exhibit C" for a "Resident Engineer and [a] Construction Administration Secretary." Thus, beginning with Pay Request No. 12 and continuing through Pay Request No. 18, CDM's total fees for the Water Treatment Plant project are reflected as follows:

---

[2]CDM does not contest the Pay Requests. However, CDM "supplements [these] fact[s] by stating that [the pay requests] and the related invoice[s] do not include all reimbursable expenses incurred by CDM in connection with . . . the WTP Expansion Project . . . ; in particular, the pay request[s] and invoice[s] do not include any of the $889,418.05 of reimbursable expenses owed to CDM at issue in [this motion]." Record Document 103-1 at ¶ 8-25.

| | |
|---|---|
| Design Fee | $3,365,635 |
| Bidding Fee | $ 258,895 |
| Const Services | $1,553,370 |
| Resident Engineer | $1,592,136 |

Id., Exhs. 89-94; Exh. 51. The total fee, under the terms of Amendment No. 3, was $6,770,036.

On February 26, 2010, CDM sent the City Pay Request No. 14. See id., Exh. 91. This pay request reflected that CDM had been fully compensated and paid by the City for the following in relation to the Water Treatment Plant: Design Fee of $3,365,635 and Bidding Fee of $ 258,895. Id. The only services which remained to be performed and billed were construction services and resident engineering. Pay Request Nos. 15-18 reflect the same. See id., Exhs. 92-94; Exh. 51.

The City contends that all of its contracts with CDM provided for the payment of a "lump sum" and that CDM billed the City a percentage of that "lump sum" based on the percentage of work CDM deemed to be completed as of the time of the invoice. Record Document 83-1 at ¶¶ 33-34. The City alleges "this was not a cost plus job." Id. at ¶ 34. The City maintains that neither the WTP Contract, Amendment No. 2, nor Amendment No. 3 "provides for the payment of labor costs and expenses over and above the agreed lump sum fees." Id. at ¶ 35.

Conversely, CDM argues that the City's material facts are incomplete and do not include all the charges, payments, reimbursements and other terms and conditions provided for under the contracts. See Record Document 103-1 at ¶¶ 33-34. CDM alleges that the pay requests and invoices do not include any of the $889,418.05 of reimbursable expenses owed to CDM and that the City agreed to reimburse CDM for these expenses. See id. at ¶ 35. CDM further points to the termination clause of the WTP contract, which

Page 4 of  14

provides, in pertinent part:

> 8.1.  Termination
>
> . . .  In the event of any termination, [CDM] will be paid for all services rendered and reimbursable expenses incurred to the date of termination and, in addition, all reimbursable expenses directly attributable to termination.

Record Document 83, Exh. 1 (Bates # CAMP 14209); see also Record Document 103-1 at ¶ 35.  A close review of CDM's factual statements reveals that it has not contested that the contracts at issue are lump sum contracts.[3]

Pay Request Nos. 1-18 do not show a breakdown of CDM's labor costs and expenses in connection with the lump sum fees.  See Record Document 83, Exhs. 78-94, 51.  For example, Pay Request No. 11, dated July 24, 2009,[4] reflects the following as to the bidding fee for the Water Treatment Plant:

| | |
|---|---|
| Total Fee | $163,348 |
| Percent Complete | 75% |
| Amount Earned | $122,511 |
| Amount Due | $122,511 |

Id., Exh. 88.  Pay Request No. 11 was "for services rendered from April 19, 2009 through July 18, 2009."  Id.  The City argues that the $125,511 invoice was to compensate CDM for its labor costs and expenses incurred during the time period stated in the invoice/pay request.

As of Pay Request No. 18, dated June 28, 2010, CDM had invoiced the City the

---

[3]The difference between a cost plus a fixed fee contract and a lump sum contract is that the former type of contract assures the contractor's profit, whereas on a lump sum contract it is possible that the contractor's anticipated and expected profit may turn into a loss because of a low bid or the rising prices of materials and/or labor.  See MKR Servs., L.L.C. v. Dean Hart Const., L.L.C., 16 So. 3d 562, 564 (La. App. 2 Cir. 7/8/09).

[4]$163,348 was the total fee before it was increased by Amendment No. 3 to $258,895.

following amounts for the Water Treatment Plant project:

| | |
|---|---|
| Design Fee | $3,365,635.00 |
| Bidding Fee | $ 258,895.00 |
| Const Services | $ 466,011.00 |
| Resident Engineer | $ 284,231.69 |
| Overtime Inspection | $     2,422.17 |
| | $4,377,194.86 |

Id., Exh. 51 (Bates # CAMP 204946). This same format–breaking down the fees between design, bidding, and construction services–was used for Pay Request Nos. 1-18. Pay Request No. 19, dated October 30, 2010, changed the format by lumping the previously broken down categories into one line item designated "Design Total ITD Costs." Id., Exh. 51 (Bates # CAMP 204951).

By letter dated June 16, 2010, the City provided CDM thirty (30) days written notice[5] of termination of the February 14, 2006 WTP Contract, as amended by Amendment Nos. 1, 2 and 3. See id., Exh. 53 (Bates # CDM 10488 - CDM 10490). The termination was due to CDM's failure to perform in accordance with the provisions, terms, and conditions of the WTP Contract, as amended. This Court previously held that the City was justified in its termination of the WTP Contract because CDM was in breach of its obligations concerning three of the projects which were the subjects of Amendment Nos. 2 and 3. See Record Documents 119-120.

In its counterclaim, CDM alleges that the City wrongfully terminated the WTP Contract, as amended by Amendment Nos. 2 and 3. See Record Document 4, ¶ XII. CDM further alleges that the City owes CDM the total amount of $1,302,928.69 in connection

---

[5]Article 8.1 of the WTP Contract provided that "further services under this Agreement may be terminated by either party upon thirty days' written notice in the event of substantial failure by the other party to perform in accordance with the terms thereof through no fault of the terminating party." Record Document 82, Exh. 1 (Bates # CAMP 14209).

with services CDM allegedly performed under the WTP Contract, Amendment Nos. 2 and 3. See id. at ¶ XIII; Record Document 15, ¶ 1. The amount of $1,302,928.69 is summarized in the attachment to CDM's September 30, 2011 letter to the City. See Record Document 83, Exh. 51 (Bates # CAMP 204942). This total amount of $1,302,928.69 includes the amount of $889,418.05 which CDM claims it is owed in connection with termination of CDM's work on the Water Treatment Plant. The City's Motion for Partial Summary Judgment addresses only CDM's claim to recover the amount of $889,418.05.

When asked to identify the origin and details of the $889,418.05 charge, CDM produced a thirty-eight page document, with backup documents, showing the charge is comprised of various expenses such as mileage, taxis, park tolls, shipping, postage, outside professionals; labor; and overtime. See Record Document 83, Exh. 177. The various expenses and labor outlined in the document were incurred in July 2009 - October 2009 and December 2009 - July 2010. See id.

## LAW AND ANALYSIS

**I.　Partial Summary Judgment Standard.**

> Rule 56(a) provides, in pertinent part:
>
> Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv.

Corp., 628 F.3d 725, 728 (5th Cir.2010).[6]  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 728.  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case."  Streber v. Hunter, 221 F.3d 701, 737 (5th Cir.2000).  Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial.  See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.1993).

---

[6]The Court notes that amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the Court's analysis.  F.R.C.P. 56(a) and Advisory Committee Notes.

## II. Interpretation of Contracts.[7]

Under Louisiana law, the "[i]nterpretation of a contract is the determination of the common intent of the parties." La. C.C. Art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. Art. 2046. "When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." Wooley v. Lucksinger, 61 So.3d 507, 558 (La. 2011). "A contract is ambiguous only if its terms are unclear or susceptible to more than one interpretation, or the intent of the parties cannot be ascertained from the language employed." Gebreyesus v. F.C. Schaffer & Assocs., Inc., 204 F.3d 639, 643 (5th Cir.2000).

Under Louisiana law, "a doubtful provision must be interpreted in light of . . . the conduct of the parties before and after the formation of the contract." La. C.C. Art. 2053. Civil Code Article 2056 further provides that "in case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." See also Wampold v. E. Eric Guirard & Associates, 442 F.3d 269, 272-273 (5th Cir. 2006).

## III. Analysis.

The City has submitted pay requests, invoices, and proof of payment establishing that from May 2008 to June 2010, CDM invoiced the City in connection with the Water

---

[7]This diversity case is governed by Louisiana substantive law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 585 S.Ct. 817; Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir.2010).

Treatment Plant project the total sum of $4,377,194.86. From July 2009 to July 2010, the last year of the project, CDM invoiced the City the total sum of $2,253,668.86. CDM now seeks to recover an additional $889,418.05 representing labor costs and expenses incurred during the same time period of July 2009 to July 2010. The City argues that CDM should not be permitted to recover the additional labor costs and expenses because it "would result in the double recovery by CDM of its labor costs and expenses." Record Document 83-2 at 11. In other words, CDM's recovery of the $889,418.05 would constitute a windfall to CDM.

The City notes that Pay Request Nos. 1-16, representing the time period of May 2008 through April 17, 2010, have been paid by the City. See Record Document 83, Exhs. 78-93.[8] Thus, CDM would not be entitled to recover its labor costs and expenses incurred during this time period, "as such would constitute a windfall amounting to double recovery." Record Document 83-2 at 12. The City did not pay the amounts invoiced in Pay Request Nos. 17 and 18 and concedes that "if CDM's claim is successful, [CDM] may arguably be entitled to the fees regarding work under the WTP Contract invoiced on Pay Request Nos. 17 and 18," i.e., $80,139.73 on Pay Request 17 and $110,023.01 on Pay Request 18. Record Document 105 at 7; Record Document 83, Exhs. 94 & 51; Exh. 175 at ¶¶ 23 & 24. Yet, the City maintains that CDM "cannot recover these amounts and recover, in addition to these amounts, [its] labor expenses and costs incurred for these pertinent time periods." Record Document 83-2 at 12.

The City also relies upon general principles of contractual interpretation to support

---

[8]CDM does not contest that the City paid all of the invoices that were submitted in connection with the WTP Contract prior to May 2010. See Record Document 103-1 at ¶¶ 8-23.

its argument.  See Record Document 105.  The City argues that any reliance by CDM upon Article 8.1 of the WTP Contract to support its counterclaim for the $889,418.05 is misplaced in light of the contract as a whole.  Article 6 of the WTP Contract provides:

> 6.1.1. *For Basic Services.*
> [The City] shall pay [CDM] for Basic Services performed or furnished under Article 2 on the basis set forth in Exhibit A.
>
> 6.1.2. *For Special Services.*
> [The City] shall pay [CDM] for Special Services performed or furnished under Article 3 on the basis set forth in Exhibit A.
>
> 6.1.3. *For Reimbursable Expenses.*
> In addition to payments provided for in paragraphs 6.1.1 and 6.1.2, [the City] shall pay [CDM] for Reimbursable Expense incurred by [CDM] and [CDM's] Subcontractors **as set forth in Exhibit A**.  The amount payable for Reimbursable Expenses will include a factor to the extent so indicated in Exhibit A.

Record Document 83, Exh. 1 (Bates # CAMP 14208) (emphasis added).  The term "Reimbursable Expenses" is defined in the WTP Contract as "the expenses incurred directly in connection with the performance or furnishing of Basic and Additional Services for the Project for which [the City] shall pay [CDM] **as indicated in Exhibit A**."  Id., Exh. 1 (Bates # CAMP 14196) (emphasis added).  Based on this clear contractual language, the specific terms of compensation for reimbursable expenses was not set forth in the general provisions of the WTP Contract, but rather in Exhibit A.

Section 4 of Exhibit A set forth the "method of payment for services rendered" for each task CDM was to perform under the WTP Contract.  Id., Exh. 1 (Bates # CAMP 14216).  For Task 1 (Process Evaluation Report and Preliminary Design Report), CDM was to receive $350,740.  See id.  For Tasks 2 - 8, the payment was "to be negotiated at the completion of Task 1."  Id.  These tasks include design, bidding, construction, resident engineering, and surveying.  See id.  There is no reference in Exhibit A to reimbursable

expenses.

Amendment No. 2 established the initial fee for the design, bidding, and general construction services provided by CDM under the WTP Contract. As set forth previously, CDM was to be paid a design fee of $2,123,525; a bidding fee of $163,348; and a construction services fee of $980,089. See id., Exh. 1 (Bates # CAMP 19567). The total lump sum fee due to CDM was $3,266,962. Amendment No. 3 then increased CDM's fee for design, bidding, and general construction services. See id., Exh. 1 (Bates # CAMP 02900). There is no reference in Amendment Nos. 2 or 3 to reimbursable expenses.

Based on these contractual provisions and the general principles of contractual interpretation set forth above, the City argues that Exhibit A's silence on the issue of reimbursable expenses is fatal to CDM's counterclaim for $889,418.05. See Record Document 105 at 4. The WTP Contract clearly provides that CDM was entitled to only those reimbursable expenses "as indicated [or set forth] in Exhibit A." See id. Because no reimbursable expenses were set forth in Exhibit A, CDM has no claim for any such expenses, whether the claim is based on Article 8.1 or any other provision. See id. Moreover, the City contends that any question as to whether CDM is entitled to reimbursable expenses must be resolved in favor of the City because the WTP Contract and its amendments are form documents prepared by CDM. See id.; see also La. C.C. Art. 2056.

In opposing the City's motion, CDM argues that the $889,418.05 amount "constitute[s] actual reimbursable expenses incurred by CDM (for services performed by CDM under the contract directly related to the expansion of Bossier's water treatment plant) that CDM was never paid or reimbursed for and that are specifically provided for under the

contract." Record Document 103 at 2. CDM maintains that due to the City's wrongful and unilateral termination of the WTP Contract, CDM did not recover the full amount of the fees and amounts agreed to under the contract. See id. at 3-4. Relying upon the affidavit of its Regional Performance Manager, Domenic Dicenso ("Dicenso"), CDM contends that its "invoices did not include/reflect all the actual expenses incurred by CDM to complete the percentage of work designated as completed in each invoice." Id. at 4. CDM also points to Article 8.1 of the WTP Contract to support its counterclaim for the $889,418.05 and notes that Dicenso stated in his affidavit that "CDM has not been paid or compensated for $889,418.05 in reimbursable expenses directly incurred on the WTP Expansion Project." Id. at 5-7.

Based on the foregoing, the Court finds that the City is entitled to partial summary judgment as a matter of law in relation to CDM's counterclaim for $889,418.05. The Court believes that the contract speaks for itself. The language employed in the contract clearly evidences a lump sum contract, not a cost plus a fixed fee contract. CDM's position is defeated by the clear language of the contract, namely because Exhibit A and Amendment Nos. 2 and 3 are all silent on the issue of reimbursable expenses. Dicenso's affidavit is unnecessary extrinsic evidence. See Wooley, 61 So.3d at 558 ("When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law."). Moreover, CDM's proffered contractual construction would result in a windfall recovery, thereby leading to an absurd result. See La. C.C. Art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

Moreover, any doubt as to the issue of reimbursable expenses must be resolved in favor of the City. Under Article 2053, this Court believes that CDM's conduct, as evidenced by its billing practices in Pay Request Nos. 1-18, contradicts its position as to the $889,418.05. Likewise, because the WTP Contract and its amendments were form documents prepared by CDM, any doubtful provision must be interpreted against CDM. See La. C.C. Art. 2056.

## CONCLUSION

The Court believes that the WTP Contract, as amended, speaks for itself and is clearly a lump sum contract, not a cost plus a fixed fee contract. CDM's position is defeated by the clear language of the contract. Thus, the Court finds no genuine disputes of material fact exist and that partial summary judgment in favor of the City is appropriate as a matter of law.

Accordingly,

**IT IS ORDERED** that the Motion for Partial Summary Judgment (Record Document 83) filed by the City be and is hereby **GRANTED**. CDM's counterclaim to recover $889,418.05 be and is hereby **DISMISSED**.

**THUS DONE AND SIGNED**, Shreveport, Louisiana, this 26th day of September, 2014.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE